## MISSOURI CIRCUIT COURT
### TWENTY-FIRST JUDICIAL DISTRICT
#### (St. Louis County)

| | | |
|---|---|---|
| SHELLIE L. ROGERS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | Cause No. *135C· CC02276* |
| BOEING AEROSPACE OPERATIONS, | ) | |
| INC. and AUGUSTINE PACHECO, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| Serve: | ) | |
| The Boeing Company | ) | |
| Registered Agent: | ) | |
| CSC-Lawyers Incorporating Serving Co. | ) | |
| 221 Bolivar Street | ) | |
| Jefferson City, Missouri 65101 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Augustine Pacheco | ) | |
| 5775 James S. McDonnell Blvd. | ) | |
| Building 270 | ) | |
| Hazelwood, Missouri 63042-2336 | ) | |

## PETITION FOR DISCRIMINATION
## IN VIOLATION OF THE MISSOURI HUMAN RIGHTS ACT

Comes now Plaintiff Shellie L. Rogers, by and through her attorneys, and for her claims against The Boeing Company (Boeing) and Augustine Pacheco (Mr. Pacheco), states as follows:

1.      Plaintiff brings this action under the Missouri Human Rights Act, Section 213.010 et seq., RSMo 1986, as amended ("MHRA").

2.      The unlawful practices complained of herein were committed within St. Louis

County, Missouri. Jurisdiction and venue in this Court are proper pursuant to Mo. Rev. Stat. §
213.111.

3.     Plaintiff Shellie L. Rogers is a female resident of the State of Illinois.

4.     Defendant Boeing is a Delaware corporation doing business in St. Louis County.

5.     At all relevant times, Defendant Boeing was an employer within the meaning of
the MHRA and employed Plaintiff in St. Louis County, Missouri.

6.     Defendant Augustine. Pacheco is, and at all relevant times was, a resident of the
State of, Missouri.

7.     At all relevant times, Defendant Pacheco acted within the scope and course of his
employment as Manager and directly acted in the interests of Defendant Boeing.

8.     On August 15, 2012, Plaintiff filed against Defendants, a timely charge of
discrimination under the Missouri Human Rights Act, which was amended on August 22, 2012.

9.     On April 15, 2013, the Missouri Commission on Human Rights issued to Plaintiff
a Notice of Right to Sue. This action has been filed within ninety days of its issuance.

10.     On October 24, 2008, Defendant Boeing hired Plaintiff as a Supply Chain
Specialist in a department devoted to managing supply of spare parts and aircraft repair orders
for the military. Her assignment throughout her employment was to manage repair orders for the
U.S. Navy.

11.     Plaintiff was hired by Boeing following a 25 year career in the U.S. Air Force;
she earned medals and other accolades for her performance during 4 tours of duty in the Middle
East where she served in Iraq, Saudi Arabia and Kuwait. Plaintiff was diagnosed by the
Veterans Administration with Post Traumatic Stress Disorder and other Gulf War related health
conditions as a result of her deployments to the Middle East. She disclosed her conditions to

2

Boeing when she was hired.

12.    Plaintiff worked successfully at Boeing for two supervisors, Martin Holtz and Gail Coleman.

13.    In February, 2010, Defendant Pacheco became Plaintiff's direct supervisor.   She worked successfully for him for 8 or 9 months and he evaluated her performance as Meets Expectations in October or November, 2010.

14.    During the holiday season, 2010, Mr. Pacheco called Plaintiff in and told her that he had noticed that she had been away from her desk more often recently and had quite a few medical appointments.   Believing that because he was also a veteran she could confide in him, Plaintiff disclosed to Mr. Pacheco for the first time that she suffered from PTSD, but that Boeing knew about her condition.   She also told him that she had been experiencing more problems, and that her VA therapist was on maternity leave and her VA psychiatrist had left to take a new job. She told him that occasionally when she felt overwhelmed or became emotional, that she would take a few minutes away from her desk to regain her composure, and when that happened she always stayed late to be sure she gave the company a full day's work.

15.    Until this time, Plaintiff had managed her schedule like everyone else in the department. Mr. Pacheco, like his predecessors, permitted the employees who reported to him to have flex time, meaning their work days began and ended at times that were convenient for their personal schedules, and they were permitted to use flex time for doctors' appointments and other personal business.   Like her co-workers, Plaintiff had sought and received permission from Mr. Pacheco for these arrangements.   Like her co-workers, she moved freely around the work area, consulting with others as needed, taking bathroom and smoke breaks as needed, but always being sure that she worked a minimum of eight hours per day.

16.     The day after her disclosure to Mr. Pacheco that she suffered from PTSD, he e-mailed her, as if they had not had a conversation about the subject, directing her that in the future when she left her desk she was to tell her lead or her co-worker Pablo Romo that she was leaving and where she was going.  Plaintiff found this humiliating and demeaning.

17.     Mr. Pacheco also directed her that effective after the holiday break, she was to be at work at 7:30 a.m.  Because she lived in Illinois and often encountered traffic delays and construction, and because her the side effects of her night time medication requirements often made her wake up groggy in the morning, it had been Plaintiff's practice to arrive at work between 8:00 a.m. and 8:30 a.m.  Mr. Pacheco told her that in the future, if she did not arrive by 7:30 a.m. she would be considered tardy.

18.     Primarily because the side effects of her medication made her groggy and sick, Plaintiff had difficulty meeting an exact 7:30 a.m. start time. Mr. Pacheco told her that in the future, if she was not at her desk by 7:30 a.m. it would be considered an attendance violation and subject to corrective action. Plaintiff requested her start time be changed to 8:00 a.m., but Mr. Pacheco denied her request.  In January, 2011, Mr.  Pacheco took her to the office and asked Human Resources to place Plaintiff on corrective action for tardiness.  Plaintiff told HR representative Paul Tricamo about the problems she was experiencing with Mr. Pacheco.  Mr. Tricamo told her that a manager had the right to expect "reasonable attendance."   After conversations with HR, Mr. Pacheco permitted Plaintiff to start work at 8:00 a.m. but he told her that, unlike her co-workers, she could no longer use flex time for any purpose, including her doctors' appointments.

19.     Mr. Tricamo later spoke privately with Plaintiff and recommended that she request a flexible work schedule as a reasonable accommodation for her disability, as well as

4

apply for intermittent FMLA leave since most of her VA doctors were only available to see her on weekdays.

20.      Plaintiff contacted Boeing Total Access to initiate the FMLA process. When Mr. Pacheco learned that Plaintiff had applied for FMLA leave, he stopped her in the hall and demanded to know why she had applied for FMLA "behind my back." His demeanor during this conversation was hostile and intimidating.  He stepped close to Plaintiff, backing her up against the wall, and said "I don't know what you're up to and by the look on your face, I can tell you didn't expect me to find out…you won't get away with this." Mr. Pacheco seemed furious as he walked away.  Plaintiff felt under attack and suffered emotional duress and an anxiety attack after the confrontation. She called Boeing's Employee Assistance Program (EAP), notified Mr. Pacheco via email and went to meet with EAP.  When Plaintiff returned from EAP, Mr. Pacheco told her that he would be monitoring her time entries to ensure she did not try to claim she was working when she met with EAP.

21.      During the balance of 2011, Mr. Pacheco continued to treat Plaintiff differently than her co-workers, who continued to be able to flex their start times anywhere between 6 and 9 a.m. and use flex time to take care of medical and other needs.  Mr. Pacheco displayed open disdain and frustration whenever she notified him of a VA medical appointment.  He told her that the frequency of her medical appointments was having a negative impact on the team and asked how she expected them to trust the quality of her work with the amount of time she spent seeking medical care.   Mr. Pacheco also told Plaintiff that no one wanted her help because everyone knows that her attendance was unreliable. He made many of these comments standing over her at her desk, publicly berating her. As Mr. Pacheco belittled Plaintiff's value to his team, she felt isolated and under duress and her self-esteem began a downhill spiral.

22.     During a snow storm when early release was authorized, Mr. Pacheco told Plaintiff that if she chose to leave early, she must take time off without pay since he had revoked her right to work from home. He told her repeatedly that she was untrustworthy, and did not "deserve" the same "privileges" that were available to her co-workers. During a department meeting, it was announced that Boeing had launched a temporary rotation program to aid in professional development, and Plaintiff and others expressed interest in participating. Mr. Pacheco stated, "I can't speak for other managers but I won't pass off my trash." Plaintiff believed that he was talking about her and that her co-workers knew that as well.

23.     In spring 2011, Plaintiff received approval for Intermittent FMLA but no action was taken in her first request for a more flexible work schedule.

24.     Eventually, Mr. Pacheco put another rule into effect that applied only to Plaintiff. He told her that she was required to leave the building at 4:30 p.m. Plaintiff and her co-workers often stayed late to make up missed time and also because distractions were minimal and conducive to completing projects that required concentration.

25.     Plaintiff made formal requests for reasonable accommodation in March, 2011 and again in September, 2011. Those requests were not addressed until February, 2012. Boeing managers told her that Mr. Pacheco had refused to participate in the reasonable accommodation.

26.     In an effort to resolve the problems, Plaintiff made internal complaints against Mr. Pacheco to Boeing Human Resources and to Boeing EEO. Her internal complaints and her efforts to get reasonable accommodation seemed to make Mr. Pacheco even more hostile toward her.

27.     As a result of Mr. Pacheco's hostility and aggression toward her in 2011, Plaintiff's mental health declined and her self-confidence continued to erode.  Her medical conditions became worse.

28.     When Plaintiff's father became terminally ill in the fall of 2011, she took additional FMLA leave to help care for him.  Within minutes of her return from FMLA leave after her father's death, Mr. Pacheco gave her a performance review on which he rated her as not meeting standards.    When Plaintiff asked Mr. Pacheco for examples which supported the evaluation, his only response was, "you can't seriously expect me to give you ammunition."

29.     Mr. Pacheco continued to impose work standards and rules on Plaintiff which were not applied to her co-corkers.  Plaintiff was required, for instance, to provide him the name and location of the doctor and the reason for each medical appointment, and he recorded this deeply personal information on his Microsoft Outlook calendar where it could be viewed by others.

30.     By the time Plaintiff's reasonable accommodation requests were addressed in February, 2012, she had no sick time left.  In January, 2012 she had the flu and was out for 16 hours, using up her last 14 hours of accrued sick leave.  She expected to take the additional two hours as time off without pay, but instead, Mr. Pacheco had HR issue her a Corrective Action Memo for an attendance violation.

31.     Mr. Pacheco continued to closely scrutinize Plaintiff and on February 29, 2012, just two weeks after the agreement to provide reasonable accommodation, she was terminated for attendance violations. Mr. Pacheco said at the termination, "I could have taken different measures but you are a waste of company resources."

32.     Defendants, by their actions and failure to act, including but not limited to those described above, have discriminated against Plaintiff because of her disability, refused to provide reasonable accommodation to her disability, and retaliated against her in violation of the Missouri Human Rights Act. As a result of Defendants' actions and failures to act, Plaintiff has lost and continues to lose wages and other financial incidents and benefits of employment, has experienced emotional pain, suffering, humiliation, embarrassment, mental anguish, inconvenience and loss of enjoyment of life, and has incurred and will continue to incur attorneys' fees and costs in connection with this matter.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor against Defendants for compensatory and punitive damages, prejudgment interest, as well as for appropriate equitable, declaratory and injunctive relief, attorneys' fees and costs and for such other relief as may be just and proper under the circumstances.

SEDEY HARPER, P.C.
Attorneys for Plaintiff

Mary Anne Sedey, # 26731
Jessica Scales, #64136
Donna L. Harper, # 26406
John D. Lynn, # 30064
2711 Clifton Avenue
St. Louis, MO 63139
314/773-3566
314/773-3615 (fax)